UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-00296-MOC

| | |
|---|---|
| **JOEL E. WARD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on Plaintiff and Defendant's cross motions for Summary Judgment. (##11, 13). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.     Administrative History

Plaintiff Joel Ward originally filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and supplemental security income ("SSI") under Title XVI of the Act on December 28, 2010, with an alleged onset date of April 5, 2004. (Tr. 247, 251). His claim was denied initially and again upon reconsideration (Tr. 157, 170). Plaintiff requested a hearing, which was held by Administrative Law Judge ("ALJ") Charles Howard on April 19, 2013. (Tr. 64). On April 29, 2013, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 33). Plaintiff requested review of this decision by the Appeals Council, which denied the request on

September 15, 2014, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1). Plaintiff now seeks review of that decision in this court.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if this court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

> The Fourth Circuit has articulated this standard for substantial evidence review:
>
> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

**IV. Substantial Evidence**

**A. Introduction**

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits in the record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, this court finds that it is.

**B. Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b. An individual who does not have a "severe impairment" will not be found to be disabled;

   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

3

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The claimant bears the burden of proof during the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden then shifts to the Commissioner at the fifth step to show that work is available in the national economy that the claimant could perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the evaluation process.

**C. The Administrative Decision**

Plaintiff met the insured status requirements of the Act through March 31, 2009. (Tr. 21). With an alleged onset date of April 5, 2004, the issue before the ALJ was whether Plaintiff was disabled between that date and the date of decision. (Tr. 21). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 21). At Step Two, he determined that Plaintiff had the following severe impairments: bilateral carpal tunnel syndrome ("CTS"), a back disorder, chronic obstructive pulmonary disease ("COPD"), borderline intellectual functioning, a depressive disorder, an anxiety disorder, and a substance abuse disorder. (Tr. 21). At Step Three, the ALJ found that Plaintiff did not have an impairment that satisfies a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22). At Step Four, the ALJ determined that Plaintiff had the residual functioning capacity ("RFC") to perform light work, so long as it involved no more than occasional fingering with both hands and fingers,

4

no concentrated exposure to pulmonary irritants, and limited to no more than occasional contact with the public. (Tr. 23). Additionally, the ALJ determined the Plaintiff was capable of performing simple, routine, repetitive tasks, able to maintain concentration and persistence for such tasks, and able to adapt to routine changes in a work setting. (Tr. 23-24). From this, the ALJ determined Plaintiff was unable to perform any past relevant work. (Tr. 30). Finally, at Step Five, in light of Plaintiff's RFC, age, education, and work experience, and based on the testimony of the vocational expert, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including occupations such as building cleaner and car wash attendant. (Tr. 31). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 33).

**D. Discussion**

*1. Plaintiff's Assignments of Error*

Plaintiff presents two challenges to the ALJ's decision, arguing that the ALJ: (1) failed to properly account for Plaintiff's liver disease and its effect on his mental functioning and (2) improperly weighed the opinion of Plaintiff's occupational therapist, Ms. Jane Blount. The court will address each assignment of error *seriatim*.

*2. First Assignment of Error: Failure to Account for Extent of Impairment*

Plaintiff argues that the ALJ wrongly found that Plaintiff's cirrhosis of the liver and Hepatitis C were not severe impairments because they caused no functional limitations and because he had not received consistent treatment for these conditions. (Tr. 22). Plaintiff contends that his liver disease has had a strong negative impact on his mental functioning. As evidence, Plaintiff cites to medical records during his time in prison, when he was placed on Lactulose to address ammonia toxicity, and noting that Lactulose is used to treat hepatic encephalopathy, a

disease which involves reduced brain function. (#12 at 5). Plaintiff also argues that the ALJ wrongly dismissed Plaintiff's liver disease as severe because Plaintiff did not receive regular treatment for it, as Plaintiff lacked the financial ability to go to a doctor for any treatment. (Tr. 298). Additionally, Plaintiff points out that the state agency physicians said his liver disease qualified as a severe impairment, which is a discrepancy the ALJ failed to explain. (Tr. 85, 104).

However, the court notes that the record indicates Plaintiff was taking Lactulose for cirrhosis, not hepatic encephalopathy. (Tr. 333). Plaintiff claims he suffers from significant mental impairments and the ALJ improperly analyzed said impairments, all because medication Plaintiff took at one point could also be used to treat a cause of those impairments. The court does not agree that Plaintiff can make this claim without evidence in the record to support such an assertion, and nowhere does the court find a diagnosis from a physician of record suggesting a diagnosis of hepatic encephalopathy instead of cirrhosis and hepatitis. Additionally, as noted by the Commissioner, a simple Internet search reveals that there are several free or low-cost clinics in and around Plaintiff's home of Madison County, contradicting Plaintiff's assertion that he could not afford a doctor to treat his supposedly severe liver disease. The ALJ also explained why, contrary to the opinions of the state agency physicians, he did not find Plaintiff's liver disease to be severe. Specifically, the ALJ noted that "[t]here is no evidence of record which indicates ongoing complaints in relation to stomach pain, hepatitis C, and cirrhosis" and "there is no evidence of any disabling complications from stomach pain, hepatitis C, and cirrhosis." (Tr. 22). Findings of physicians are not binding, and may be ignored if they are contradicted by evidence of the record, as the ALJ suggests. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Further, at least one physician opinion to which the ALJ gave great weight suggested that Plaintiff's only real limitation from his liver disease was tenderness in his abdomen. (Tr. 443).

6

Consequently, the court finds ALJ's finding of Plaintiff's liver disease as non-severe is justified, given the substantial evidence in the record to support the ALJ's assertions that Plaintiff suffered from no real limitations from his liver conditions. Additionally, the court notes that even if the ALJ had not explained the reasoning behind his finding, this court has found in the past that such a discrepancy does not constitute reversible error. See Powell v. Astrue, 927 F. Supp. 2d. 267, 274 (W.D.N.C. 2013) (where the court found that when "an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining [sequential review] steps") (internal citations and quotations omitted).

### 3. *Second Assignment of Error: Weight of Medical Opinion Evidence*

Plaintiff also argues that the ALJ improperly weighed the opinion of Plaintiff's occupational therapist, Ms. Blount. An ALJ must evaluate every medical opinion in the record. See 20 C.F.R. § 404.1527(c). "Medical opinions" within the meaning of the Social Security regulations are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Under governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R. § 416.927). Thus, "[b]y negative implication, if a physician's opinion is not supported by

7

clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). In such circumstances, the ALJ may give less weight to testimony of a treating physician in the face of persuasive contrary evidence. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating physician's opinion is not given controlling weight, the ALJ is obligated to evaluate and weigh the medical opinion pursuant to the following factors: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005))). If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2). The ALJ's explanation of these "good reasons" must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996).

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." Love-Moore v. Colvin, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing Hill v. Astrue, 698 F.3d 2253, 1159-60 (9th Cir. 2012); Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747, 750 (6th Cir. 2007); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)). "[F]ederal courts have remanded decisions of the Commissioner when they fail to articulate 'good reasons' for

discrediting the opinion of a treating source, as expressly required by 20 C.F.R. § 404.1527(d)(2)." Newhart v. Colvin, 6:13-CV-01606, 2014 WL 1330929 (S.D.W. Va. Mar. 31, 2014). See also Halloran v. Barnhart, 362 F.3d 28, 33 (2nd Cir. 2004); Stroup v. Apfel, 205 F.3d 1334, at *6 (4th Cir. 2000) (remands based on ALJ's failure to explain rejection of treating source's opinion).

Plaintiff argues that the ALJ wrongly gave Ms. Blount's opinion little weight, contending that Ms. Blount's opinion is actually consistent with the record and criticizing the ALJ's failure to explain how Ms. Blount's opinion is inconsistent. Plaintiff cites to a recent diagnosis of carpal tunnel syndrome by another doctor in the record, which Plaintiff notes is consistent with Ms. Blount's opinion that Plaintiff suffers from significant impairment in his upper extremities and that he could not perform any tasks involving grasping, fine motor coordination, or sustained grip. (Tr. 472). Plaintiff also noted that Ms. Blount's opinion was based on medical testing (specifically, through the Nine Hole Peg Test and the Perdue Peg Board). (Tr. 471-72). Consequently, Plaintiff argues Ms. Blount's opinion is based on objective testing, consistent with the medical record, and the ALJ committed prejudicial error by giving it little weight.

However, as the Commissioner noted, Ms. Blount's opinion is contradicted by substantial evidence in the record, and is of limited probative value due to how recent her examination of Plaintiff was performed (less than a month before the ALJ rendered his decision). (Tr. 472, 33). Earlier examinations and testing from actual physicians, to which the ALJ gave greater weight, contradicted the findings of Ms. Blount—an occupational therapist. For example, where Ms. Blount found that Plaintiff suffers from significant impairment in his upper extremities, Dr. Burgess found Plaintiff to have normal strength in the upper and lower extremities. (Tr. 444). Though Ms. Blount stated Plaintiff would be incapable of grasping objects or maintaining a

9

sustained grip, Dr. Burgess found Plaintiff capable of manipulating small and medium objects without difficulty. (Id.). Additionally, the Commissioner notes that while the ALJ gave Ms. Blount's opinion little weight, he nevertheless took it into account when formulating Plaintiff's RFC. The opinions of Dr. Burgess and the state agency doctors do not support a finding of limited to occasional fingering with both hands; rather, their opinions and evidence give substantial support to a much less restrictive RFC, (Tr. 89, 109, 444), as found by the ALJ. The only support for limiting Plaintiff in this manner is Ms. Blount's opinion. The ALJ thus considered Ms. Blount's recent examination of Plaintiff, but chose not to accord it greater weight due to the conflicts with the rest of the record.

Consequently, the court finds no error in the ALJ's decision to give Ms. Blount's opinion little weight. While she is an acceptable medical source, she is not accorded the weight of a treating physician, and the ALJ nevertheless incorporated her opinion when determining Plaintiff's RFC. Further, given that Ms. Blount's opinion is "inconsistent with the other substantial evidence in the record," the ALJ is justified in giving it less weight. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

## V. Conclusion

This court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted),

Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (#11) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment (#13) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: July 24, 2015

Max O. Cogburn Jr
United States District Judge